IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
DEBORAH A. PATTON                : CASE NO.  1:03 CV 1230
                                 :
                     Plaintiff   :
                                 :
           -vs-                  :
                                 : <u>MEMORANDUM OF OPINION AND</u>
                                 : <u>ORDER</u>
JOHN E. POTTER                   :
                                 :
                     Defendant   :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

The issue before this Court is whether subject matter jurisdiction exists over discrimination and retaliation claims predicated on the defendant's alleged constructive discharge of plaintiff Deborah A. Patton.  Having reviewed the administrative record, plaintiff's second amended complaint, and the parties' memoranda of law, this Court finds that it has subject matter jurisdiction only over plaintiff's claims that "she was discriminated [and retaliated] against by not being permitted to assume her new position as a Tour 2 Equipment Operator."  (ECF 44, at 1-2; ECF 43, at ¶¶10-11; ECF 47 & 49). Ms. Patton's remaining discrimination and retaliation claims are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### *The Factual Background*

Ms. Patton, a 51-year old black women, first began working for the United States Postal Service ("USPS") on 23 August 1980 as a mail handler at the Cleveland Processing/Distribution Center.  (ECF 43, ¶¶5 & 15).  After eleven years in the employ

of the USPS, Ms. Patton was diagnosed with adjustment disorder and mild depression allegedly brought on by "harassment, sexual and otherwise, in the workplace."  (Id. at ¶8).  By 1998, her condition evolved into major depression.  (Id.)  "On 17 September 1999, Ms. Patton took a medical leave for abdominal surgery." (Id. at 9).   When Ms. Patton returned to work on 16 November 1999, she was under medical restrictions. (Id.)  Nonetheless, Ms. Patton's supervisors allegedly harassed her, forced her to perform her regular duties, sent her home without pay, and referred her to "the Employee Assistance Program" ( "EAP").  (Id.)

On 28 December 1999, Ms. Patton successfully bid for a position as a Tour 2 Equipment Operator.  (Id. at ¶10).  Ms. Patton completed a training program for the bid on 12 January 2000.   (Id.)  Although Ms. Patton was set to begin working as a Tour 2 Equipment Operator on 15 January 2000, she "was not properly placed in her bid until about [26 February 2000]."  (Id. at ¶¶10-11).  On 7 February 2000, Ms. Patton filed an "EEO Information for Pre-Complaint counseling."  (Id. at ¶12).  Dissatisfied with counseling efforts, Ms. Patton filed an EEO complaint on 4 June 2000 in agency case number 1C-441-0050-00 ("Case 0050").  (Id. at ¶13 & ECF 47).  In her complaint in Case 0050, Ms. Patton alleged the USPS retaliated against her for prior EEOC activity and discriminated against her based on gender, race, age and disability by delaying the start of her new bid assignment.  (ECF 47).  The agency completed its investigation in Case 0050 on 14 November 2000 and issued its final decision in March 2002.[1]

---

[1]The EEOC concluded that Ms. Patton failed to make a *prima facie* showing of sex, race, age, or disability discrimination and found "no nexus" between the USPS's delay in permitting Ms. Patton to start her new bid and Ms. Patton's prior EEO activity to support a claim for retaliation.  (ECF 47).

2

On 6 July 2000, the USPS issued a "Notice of Suspension of 14 days or less" to Ms. Patton on the grounds that she failed to keep her regular work schedule. (ECF 43, at ¶14). The day after receiving the Notice of Suspension, Ms. Patton applied for disability retirement, which was allowed. (Id.) Ms. Patton's disability retirement allegedly constitutes "constructive discharge" as it was a "direct and proximate result of [the defendant's] discriminatory actions, hostile work environment, harassment and retaliation inflicted upon her by her supervisors at the USPS, because of her race, gender, disability, age, and prior EEO Complaints." (Id.)

### *Ms. Patton's Prior Litigation Against the USPS*

During her employment with the USPS, Ms. Patton "filed numerous Informations [sic] for Pre-Complaint counseling and EEO Complaints." (ECF 43, at ¶7). Ms. Patton also filed several lawsuits against USPS alleging discrimination and retaliation. The first lawsuit, Patton v. Runyon, Case Number 1:96 CV 2202, was filed by Ms. Patton, acting pro se, on 9 October 1996 (the "1996 Litigation"). The 1996 Litigation was resolved against Ms. Patton on 24 October 1997, when defendant's motion for summary judgment was granted as to all of Ms. Patton's claims.

Again acting pro se, Ms. Patton filed her second lawsuit against the USPS, Patton v. Potter, Case Number 1:02 CV 1891, on 24 September 2002 (the "2002 Litigation"). The 2002 Litigation arose from the USPS's alleged discriminatory treatment of Ms. Patton with regard to her hernia injury in 1997. On 15 May 2003, the 2002 Litigation was terminated pursuant to a stipulated dismissal order. After initiating two additional lawsuits against the USPS, and after retaining attorney John L. Wolfe as counsel in the instant lawsuit, Ms. Patton moved to vacate the stipulated dismissal in

3

the 2002 Litigation.[2]  Ms Patton also moved to reopen the 2002 Litigation and to consolidate all pending litigation against the USPS (including the instant case) with the 2002 Litigation.  On 15 December 2003, the presiding judge in the 2002 Litigation denied Ms. Patton's motions.  The 2002 Litigation was finally terminated on 8 January 2004.

Again acting pro se, Ms. Patton filed her third lawsuit against the USPS, Patton v. Potter, Case Number 1:03 CV 1609, on 29 July 2003 (the "2003 Litigation").[3]  Ms. Patton's two paragraph complaint in the 2003 Litigation read as follows:

1. The U.S. Postal Service employees in its entirety has continuously retaliated, harassed and discriminated against me through-out my Postal career.  As a result of many years of a hostile work environment, I became ill with an emotion disorder which forced me to filed [sic] for disability retirement in the year of 2000.

2. I am seeking back pay along with front pay, compensatory and punitive damages, and such other relief as allowed by law.

---

[2]Mr. Wolfe first appeared in this case on 5 December 2003.  (ECF 15).  At a 10 December 2003 status conference in this case, Mr. Wolfe notified the Court of Ms. Patton's additional lawsuits against the USPS.  (ECF 16).  The Case Management Conference in this case was cancelled pending resolution of Ms. Patton's motions in the 2002 Litigation.  (Id.)

[3]To her complaint, Ms. Patton attached a final decision from the EEOC in Agency Case No. 4C-440-0206-00 ("Case 0206").  (Patton v. Potter, No. 1:03 CV 1609, ECF 1, at Ex. 1).  The decision in Case 0206 addressed Ms. Patton's charges that the USPS subjected her to discrimination, retaliation and a hostile work environment when her supervisor:  (1) altered her Form 3971; (2) "failed to offer her LWOP" when Ms. Patton requested "FMLA" leave; (3) made derogatory sexist directives; (4) incorrectly calculated Ms. Patton's seniority; (5) disregarded Ms. Patton's medical documentation; (6) issued Ms. Patton a 7-day and 14-day suspension; and (7) forced Ms. Patton to go to EAP.  (Id.)

On 21 August 2003, this Court dismissed Ms. Patton's complaint in the 2003 Litigation without prejudice.[4]

### *The Instant Litigation*

Acting pro se, plaintiff Deborah A. Patton, initiated the instant action on 19 June 2003 by filing a three-page complaint citing Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and the American with Disabilities Act, 42 U.S.C. § 12101 (the "ADA"). (ECF 1). To her initial complaint, Ms. Patton attached the EEOC's decision in Case 0050. (ECF 1, Ex. 1). The decision in Case 0050, related only to Ms. Patton's allegation that the USPS discriminated and retaliated against her "when on January 15, 2000, she was not allowed to start a new bid assignment." (Id.) In her initial complaint, Ms. Patton alleged facts related to the bid assignment issue, and also alleged facts outlining a series of events from her entire "postal career" which allegedly created a "hostile [work] environment." (ECF 1, ¶¶1-6).

Due to the disparity between the broad allegations of Ms. Patton's initial complaint and the facts referenced in the attached EEOC decision, and the lack of clarity regarding the legal basis of Ms. Patton's claims, this Court ordered Ms. Patton to file an amended complaint. (ECF 21). No longer acting pro se, Ms. Patton filed her first amended complaint on 17 December 2004. (ECF 26). The first amended complaint deleted reference to the ADA and cited additional federal laws – the Age Discrimination in Employment Act of 1967 (the "ADEA") and the Rehabilitation Act of 1973, 29 U.S.C. §

---

[4]Absent language specifying a complaint is dismissed with prejudice, a presumption arises that the complaint is dismissed without prejudice. See Ernst v. Rising, 427 F.3d 351, 367 (6th Cir. 2005); English v. Cowill, 10 F.3d 434 (7th Cir. 1993).

701 et seq. (the "Rehabilitation Act").[5]  Otherwise, Ms. Patton's first amended complaint mirrored the confusing style and facts set forth in Ms. Patton's initial pro se complaint. (ECF 26).

On 8 July 2005, Ms. Patton was given a third and final opportunity to clarify her claims and the proper scope of this litigation. (ECF 21, 24 & 38). The 8 July 2005 Order set forth a briefing schedule to facilitate an early ruling on the issues of whether Ms. Patton had exhausted her administrative remedies and whether the three prior cases filed by Ms. Patton had a preclusive effect on Ms. Patton's pending claims. (Id.) Ms. Patton filed her second amended complaint and memorandum of law almost three weeks late, and she did not, as ordered, "separately delineate her several causes of action which are currently collapsed into a single claim for relief."[6] (ECF 43 & 44). The defendant filed an answer to Ms. Patton's second amended complaint on 16 August 2005 (ECF 48),[7] but did not file its memorandum regarding the issues of exhaustion and claim preclusion until 29 August 2005 – ten days after the date set forth in this Court's 8 July 2005 Order. (ECF 49). Ms. Patton did not file a reply to the

---

[5]Ms. Patton properly omitted the ADA claim from her first amended complaint. The Rehabilitation Act is the exclusive means for a federal employee, such as Ms. Patton, to bring a claim of disability discrimination in federal court. 29 U.S.C. § 794(a) (entitling aggrieved federal employees to "the remedies, procedures, and rights" set forth in Title VII).

[6]Ms. Patton's second amended complaint, like her original and first amended complaints, sets forth a *single* "claim for relief" alleging the USPS: (1) retaliated against her; (2) subjected her to "harassment, sexual and otherwise;" and (2) created "a hostile work environment" because of Ms. Patton's "race, gender, disability and age." (ECF 43, at ¶¶5-18). This Court has previously noted the unacceptability of plaintiff and her counsel's "lack of diligence in clarifying plaintiff's allegations." (ECF 24).

[7]In answering each of Ms. Patton's complaints, the defendant asserts as affirmative defenses that this Court lacks subject matter jurisdiction over Ms. Patton's claims due to her failure to exhaust her administrative remedies. (ECF 5, 27 & 48).

defendant's memorandum. To avoid further delay in reaching the merits of Ms. Patton's viable claims, all of the parties' untimely filings have been accepted and considered by this Court.

### *Legal Analysis*

The law is well-settled that this Court may exercise subject matter jurisdiction only over those claims in Ms. Patton's second amended complaint filed in compliance with the requirement of administrative "exhaustion." See Brown v. General Services Administration, 425 U.S. 820, 832 (1976) (holding plaintiff's failure to exhaust administrative remedies deprived district court of jurisdiction over Title VII claims); Smith v. United States Postal Service, 742 F.2d 257, 262 (6th Cir. 1984) (holding that failure to exhaust administrative remedies deprived district court of jurisdiction over Rehabilitation Act claims). The exhaustion requirement is satisfied if the allegations of Ms. Patton's second amended complaint are "limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" Ang v. The Proctor & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991).

There is no dispute that Ms. Patton's charge in Case 0050 does not reference her retirement from the USPS. Defendant argues Ms. Patton's failure to reference her retirement from the USPS deprives the Court of subject matter over Ms. Patton's constructive discharge claims because Ms. Patton failed to exhaust her administrative

remedies.[8] (ECF 49, at 4). Ms. Patton contends that she satisfied the exhaustion requirement as to her constructive discharge claim because "a constructive discharge is a foreseeable consequence of retaliation" and the EEOC "had knowledge that [Ms. Patton] was alleging a continuous pattern of discrimination and retaliation dating back to 1990."[9] (ECF 44, at 2).

The "continuous violation theory" alluded to by Ms. Patton is recognized in the Sixth Circuit as a way to save an *untimely* discrimination claim: "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." Weigel v. Baptist Hosp. of East Tenn., 302 F.3d 367, 376 (6th Cir. 2002) (quoting Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992)). Here, defendant does not argue that Ms. Patton's constructive discharge claims are untimely; thus, the "continuous violation theory" is inapplicable.

Ms. Patton's "foreseeable consequence" argument fairs no better. None of the cases cited by Ms. Patton support her contention that "a constructive discharge is a foreseeable consequence of retaliation" such that checking the box for "retaliation" on an EEOC complaint would satisfy the exhaustion requirement for a constructive

---

[8]Defendant also argues that plaintiff's constructive discharge claims are barred by res judicata due to this Court's dismissal of the 2003 Litigation. (ECF 49, at 3). Defendant's res judicata argument fails because this Court's dismissal of the 2003 Litigation was not on the merits. Supra, note 4. Defendant did not argue res judicata with regard to the 1996 Litigation or the 2002 Litigation.

[9]Ms. Patton focuses solely on the language set forth in her 0050 Complaint. (See ECF 44 & 47 (providing the 0050 Complaint and related decision as the only record of administrative action related to Ms. Patton's second amended complaint)). Thus, this Court's analysis is limited to Ms. Patton's 0050 Complaint.

8

discharge claim. In fact, in many of the cases cited by Ms. Patton, the courts held that the exhaustion requirement had *not* been satisfied, and the plaintiffs' discrimination and/or retaliation claims were properly dismissed. See Ang, 932 F.2d at 546-47 (affirming dismissal of race discrimination and retaliation claims); Davis v. Sodexho, Cumberland College Cafeteria, 157 F.3d 460, 462 (6th Cir. 463 (6th Cir. 1998) (affirming dismissal of age discrimination claim);[10] Schaffrath v. Akron/Summit/Medina Private Industrial Council, 674 F. Supp. 1308, 1312-13 (N.D. Oh. 1987) (dismissing discrimination claim).

Those cases cited by Ms. Patton which found the exhaustion requirement satisfied are distinguishable on their facts.[11] Only Duggins v. Steak 'N Shake, Inc., involved exhaustion of a constructive discharge claim. 195 F.3d 828, 833-34 (6th Cir. 1998). In Duggins, the plaintiff explicitly informed the EEOC in an affidavit accompanying her complaint that her supervisor "would continue to make life more miserable and that my career was destroyed, and that *I had no alternative but to leave* Steak N' Shake." Id. at 833-34 (emphasis added). Under these circumstances, the Duggins court rejected the argument that plaintiff failed to exhaust administrative

---

[10]Ms. Patton cites Davis for the proposition that "where the EEOC's investigation of one discrimination charge *in fact* reveals evidence of a different type of discrimination against the employee, a lawsuit based on the newly understood claim cannot be barred." (ECF 44, at 4-5 (emphasis added)). This proposition of law provides no assistance to Ms. Patton, because there is no indication in the administrative record that the EEOC's investigation *in fact* "revealed" Ms. Patton's constructive discharge claim. The administrative record submitted to this Court by Ms. Patton includes no reference to any conduct by her or the USPS after 26 January 2000. (ECF 47).

[11]See Seay v. Tennessee Valley Auth., 340 F.Supp.2d 844 (E.D. Tenn. 2004) (finding the exhaustion requirement satisfied as to plaintiff's claims for compensatory damages based in part upon the pro se complainant's allegation in his EEOC complaint that he suffered "substantial emotional distress").

9

remedies by leaving the box for a retaliation claim on her EEOC complaint unchecked.[12] Id. Here, the facts are reversed. While Ms. Patton checked the box for a retaliation claim on her complaint in Case 0050, there is no indication that the EEOC was informed by Ms. Patton, or discovered during its investigation, that Ms. Patton was "forced" to retire from the USPS. Thus, Duggins does not support Ms. Patton's contention that she exhausted her administrative remedies.[13]

Because Ms. Patton's complaint in Case 0050 contains no reference to Ms. Patton's retirement, and there is no evidence that the EEOC actually or should have considered the retirement, this Court cannot exercise subject matter jurisdiction over Ms. Patton's constructive discharge/retirement claims. Permitting Ms. Patton to litigate such claims after failing to present them to the EEOC would deprive the USPS of the notice to which it is entitled under the law and "would frustrate the statutory scheme of informal persuasion and voluntary compliance." See Schaffrath, 674 F.Supp. at 1314.

### *Conclusion*

Based upon the foregoing, this Court finds that it has subject matter jurisdiction only over Ms. Patton's claims that she was discriminated and retaliated against by not

---

[12] The Duggins court also emphasized that plaintiff was "not represented by legal counsel in writing her EEOC charge." Duggins, 958 F.2d at 833. Here, the administrative record submitted to this Court by Ms. Patton indicates that she was represented by attorney Howard V. Mishler in relation to her 0050 Complaint. (ECF 47).

[13] The Weigel case is similarly distinguished. 302 F.3d at 380. Like the plaintiff in Duggins, the Weigel plaintiff simply failed to check the retaliation claim box on the EEOC complaint. Id. Administrative exhaustion was nonetheless achieved because "[t]he facts supporting [plaintiff's] retaliation claim emerged from the nondiscriminatory explanation advanced by [the employer] for its refusal to rehire [plaintiff]". Id. Again, there is no indication in the record before this Court that the fact of Ms. Patton's retirement was ever presented to or considered by the EEOC in Case 0050.

being permitted to assume her new position as a Tour 2 Equipment Operator.  Ms. Patton's remaining discrimination and retaliation claims, predicated on alleged constructive discharge related to Ms. Patton's retirement from the USPS, are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

     /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: 15 December 2005