IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH A. PATTON, | ) | CASE NO. 1:03CV1230 |
| | ) | |
| | ) | JUDGE WELLS |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | MEMORANDUM OPINION |
| GENERAL, U.S. POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the magistrate judge on referral from Judge Wells. Pending is defendant's ("USPS") Motion for Summary Judgment. The motion is opposed. For the reasons set forth below, the court recommends that the motion be granted.

I.

Plaintiff filed the instant action on June 19, 2003. On December 15, 2005 Judge Wells issued a Memorandum Opinion and Order dismissing all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) except for the claim that plaintiff was discriminated and retaliated against by not being permitted to assume her new position as a Tour 2 Equipment Operator on January 15, 1999. The pending summary judgment motion is limited to that discrete issue.

Judge Wells summarized plaintiff's, Deborah Patton's ("Patton"), complaint, as follows:

Ms. Patton, a 51-year old black woman, first began working for the United States Postal Service ("USPS") on 23 August 1980 as a mail handler at the Cleveland Processing/Distribution Center. (ECF 43, ¶¶5 & 15). After eleven years in the employ of the USPS, Ms. Patton was diagnosed with adjustment disorder and mild depression allegedly brought on by "harassment, sexual and otherwise, in the workplace." (Id. at ¶8). By 1998, her condition evolved into major depression. (Id.) "On 17 September 1999, Ms. Patton took a medical leave for abdominal surgery." (Id. at 9). When Ms. Patton returned to work on 16 November 1999, she was under medical restrictions. (Id.) Nonetheless, Ms. Patton's supervisors allegedly harassed her, forced her to perform her regular duties, sent her home without pay, and referred her to "the Employee Assistance Program" ( "EAP"). (Id.)

On 28 December 1999, Ms. Patton successfully bid for a position as a Tour 2 Equipment Operator. (Id. at ¶10). Ms. Patton completed a training program for the bid on 12 January 2000. (Id.)  Although Ms. Patton was set to begin working as a Tour 2 Equipment Operator on 15 January 2000, she "was not properly placed in her bid until about [26 February 2000]." (Id. at ¶¶10-11). On 7 February 2000, Ms. Patton filed an "EEO Information for Pre-Complaint counseling." (Id. at ¶12). Dissatisfied with counseling efforts, Ms. Patton filed an EEO complaint on 4 June 2000 in agency case number 1C-441-0050-00 ("Case 0050"). (Id. at ¶13 & ECF 47). In her complaint in Case 0050, Ms. Patton alleged the USPS retaliated against her for prior EEOC activity and discriminated against her based on gender, race, age and disability by delaying the start of her new bid assignment. (ECF 47). The agency completed its investigation in Case 0050 on 14 November 2000 and issued its final decision in March 2002.[1]

On 6 July 2000, the USPS issued a "Notice of Suspension of 14 days or less" to Ms. Patton on the grounds that she failed to keep her regular work schedule. (ECF 43, at ¶14). The day after receiving the Notice of Suspension, Ms. Patton applied for disability retirement, which was allowed. (Id.) Ms. Patton's disability retirement allegedly constitutes "constructive discharge" as it was a "direct and proximate result of [the defendant's] discriminatory actions, hostile work environment, harassment and retaliation inflicted upon her by her supervisors at the USPS, because of her race, gender, disability, age, and prior EEO Complaints."  (Id.)

---

[1]The EEOC concluded that Ms. Patton failed to make a *prima facie* showing of sex, race, age, or disability discrimination and found "no nexus" between the USPS's delay in permitting Ms. Patton to start her new bid and Ms. Patton's prior EEO activity to support a claim for retaliation.  (ECF 47).

*******
## The Instant Litigation

Acting pro se, plaintiff Deborah A. Patton, initiated the instant action on 19 June 2003 by filing a three-page complaint citing Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and the American with Disabilities Act, 42 U.S.C. § 12101 (the "ADA"). (ECF 1). To her initial complaint, Ms. Patton attached the EEOC's decision in Case 0050. (ECF 1, Ex. 1). The decision in Case 0050 related only to Ms. Patton's allegation that the USPS discriminated and retaliated against her "when on January 15, 2000, she was not allowed to start a new bid assignment." (Id.) In her initial complaint, Ms. Patton alleged facts related to the bid assignment issue, and also alleged facts outlining a series of events from her entire "postal career" which allegedly created a "hostile [work] environment." (ECF 1, ¶¶1-6).

Due to the disparity between the broad allegations of Ms. Patton's initial complaint and the facts referenced in the attached EEOC decision, and the lack of clarity regarding the legal basis of Ms. Patton's claims, this Court ordered Ms. Patton to file an amended complaint. (ECF 21). No longer acting pro se, Ms. Patton filed her first amended complaint on 17 December 2004. (ECF 26). The first amended complaint deleted reference to the ADA and cited additional federal laws – the Age Discrimination in Employment Act of 1967 (the "ADEA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"). Otherwise, Ms. Patton's first amended complaint mirrored the confusing style and facts set forth in Ms. Patton's initial pro se complaint. (ECF 26).

On 8 July 2005, Ms. Patton was given a third and final opportunity to clarify her claims and the proper scope of this litigation. (ECF 21, 24 & 38). The 8 July 2005 Order set forth a briefing schedule to facilitate an early ruling on the issues of whether Ms. Patton had exhausted her administrative remedies and whether the three prior cases filed by Ms. Patton had a preclusive effect on Ms. Patton's pending claims. (Id.) Ms. Patton filed her second amended complaint and memorandum of law almost three weeks late, and she did not, as ordered, "separately delineate her several causes of action which are currently collapsed into a single claim for relief." (ECF 43 & 44). The defendant filed an answer to Ms. Patton's second amended complaint on 16 August 2005 (ECF 48), but did not file its memorandum regarding the issues of exhaustion and claim preclusion until 29 August 2005 – ten days after the date set forth in this Court's 8 July 2005 Order. (ECF 49). Ms. Patton did not file a reply to the defendant's memorandum. To avoid further delay in reaching the merits of Ms. Patton's viable claims, all of the parties' untimely filings have been accepted and considered by this Court.

Memorandum Opinion and Order, *1-7. Because of Judge Wells' Order, this court considers only

3

the issue of the delayed start of the Tour 2 Equipment Operator position.

The evidence, construed in favor of plaintiff as it must be at this point in the proceedings, is as follows. On November 15, 1999 Patton returned to work from surgery with a statement from her physician, Patricia A. McNamara, M.D., that she could work with modifications from November 15-December 20, 1999. On December 2, 1999 Dr. McNamara wrote that Patton's restrictions were no heavy lifting over 25 pounds, no pulling or pushing over 30 pounds, and no repetitive bending or twisting for more than one to two hours at a time and set an expiration date of December 30, 1999. On December 8 plaintiff's psychiatrist wrote that Patton was "stressed out" and requested that she be permitted to work within the restrictions imposed by Dr. McNamara.

On December 28, 1999 Patton was told that she was the successful bidder on the Tour 2 Equipment Operator position and that she could assume the position after she received training on the equipment. The anticipated start date was January 15, 2000. On January 19, 2000 the USPS Postal Employee Development Center (PEDC") notified the Human Resources Department that Patton was qualified for the job and had completed her training successfully.

On January 20, 2000 Rebecca Clark, Human Resource Specialist, notified plaintiff that she was required to submit medical certification indicating her ability to fully perform the duties of the new position within six months. The letter read, in relevant part:

> This correspondence is in reference to your bid under Posting MH9908. In compliance with a Memorandum of Understanding between the U.S. Postal Service and Mail Handlers Union, Local 304, AFL-CIO, an employee who is temporarily disabled will be allowed to bid and be awarded a preferred bid assignment, provided that the employee will be able to <u>assume</u> the position within six (6) months from the time at which the bid is submitted. Management may, at the time of submission of the bid, or at <u>any time thereafter</u>, request that the employee provide medical certification.
>
> You are therefore requested to provide medical certification indicating that

4

> you will be able to fully (unequivocally) perform the duties of the bid-for position within six months of the bid. The medical documentation must be on your physician's letterhead and signed by the treating physician.
>
> The medical document must state that you "can/cannot perform the full duties of the position, without restrictions, within 6 months." Please note that the physician who placed you under restrictions should know your condition and the prognosis. A "new" appointment should not be necessary.
> . . .

Government Exhibit ("Gov. Ex.") A. Plaintiff was required to return the certification by close of business on January 27, 2000. On January 26, 2000 plaintiff delivered a letter from Dr. McNamara stating that she was able to return to work without restrictions on December 31, 1999. Clark gave Patton an official start date of January 29, 2000, and she was paid at the higher rate as of that date. Declaration of Cullen Kiely, Supervision, Payroll Services at the Accounting service Center of the USPS, ¶ 6.

In the meantime, Patton had filed Information for Pre-Complaint Counseling with the defendant's EEO office seeking back pay from January 15, 2000 and other relief. She then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 4, 2000 alleging retaliation, race discrimination and discrimination based on medical condition by the USPS. Patton identified JoAlice Tucker ("Tucker"), manager distribution operations, as the individual who discriminated against her. It is undisputed that the differential in pay suffered by plaintiff from January 15-28, 2000 is $.42 per hour for a total of $31.36.

Plaintiff contends in her opposition to the motion for summary judgment that she was not physically disabled as of January 19 but had mental disabilities, "as indicated by Dr. Arlen's letter of December 8, 1999." Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment ("Oppo.") at 3. The note from Dr. McNamara dated January 26, 2000 states that

5

"Deborah Patton may return to work on 12/31/99. She may perform full duties of the position without restriction."

Plaintiff argues that 1) she was subjected to a hostile work environment in violation of the American with Disabilities and Rehabilitation Acts and 2) in refusing to allow her to assume the Tour 2 Equipment Operator position on January 15, 2000, defendant retaliated against her for previous EEOC complaints.

II.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323. In this way summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250. The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S.

at 324. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ." *Id.* The issue which the court must determine is whether there is evidence on which a jury could reasonably find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

III.

A. ADA and Rehabilitations Act Violations.

Plaintiff's arguments with respect to violations of the ADA and Rehabilitation Act are outside of the scope of this action as defined by Judge Well. In short plaintiff is bootstrapping the hostile environment claims that were dismissed onto a disability claim. The issue here is whether plaintiff was discriminated or retaliated against in the matter of assumption of her Tour 2 Equipment Operator position. It is not whether Tucker created a hostile work environment in 1999 based on plaintiff's mental and physical disabilities.[2]

B. Retaliation.

Patton filed EEOC complaints as early as 1989; according to her, many of those complaints involved the conduct of Tucker. She argues here that Tucker "refused to allow her to begin her new assignment . . . " and in retaliation for Patton's contacting the EEOC, "telephoned Rebecca Hall and maliciously told her that Patton was under medical restrictions." Oppo. at 9.

Clark has testified that she sent the notice to Patton regarding the need for medical certification and did so consistent with requirements of a Memorandum of Understanding ("MOU") in the Collective Bargaining Agreement ("CBA"). Clark decl. at ¶ 10. It is correct that she sent the

---

[2] Further, plaintiff has cited no case law that extends the concept of hostile environment into the areas covered by disability law.

7

notice after Tucker told her that plaintiff had been working light duty. *Id.* at ¶ 11. Clark then made the bid assignment effective on January 29, 2000, two days after receiving the medical documentation. *Id.*

Title VII prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S.___, 126 S.Ct. 2405 (2006), the Court adopted a standard for retaliation that alters Sixth Circuit law. Specifically, the Court determined that the "adverse effect" flowing from the retaliation was not limited to an effect on the terms, conditions, or benefits of employment. The Court held:

> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Id.* at 126 S.Ct. 2409. The Court emphasized "material adversity," stating "we believe it is important to separate significant from trivial harms." In adopting the standard of a "reasonable employee" the Court stated:

> We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here.

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. . . .  Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others."

*Id.* at 126 S.Ct. 2415 (citations omitted).

Post-*White* the Sixth Circuit articulated that a plaintiff establishes a prima facie case of retaliation by showing that "(1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected."  *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 742, ___ , 2006 WL 1912736, at *49 (6th Cir. 2006).  Based on *White*, this court interprets step three of the prima facie case to require a showing that a reasonable employee would have found the challenged action materially adverse.  *Smith v. Century Concrete, Inc.*, 2006 WL 1877013, at *10 (D.Kan. July 6, 2006), *citing Argo v. Blue Cross and Blue Shield of Kansas Inc.*, 2006 WL 1806605, at *7 (10th Cir. 2006).  A materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *White*, 126 S.Ct. 2415 (citation omitted).

Once the plaintiff establishes a prima facie case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).  The burden of going forward then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext.  *Id*.

USPS contends that plaintiff has not made out a prima facie case of retaliation,

9

arguing that plaintiff has failed to show an adverse employment action or a material change in benefits. USPS points to plaintiff's alleged loss of $31.36 to urge that the "paltry sum" cannot constitute an adverse action. Plaintiff responds that she was burdened by the requirement of having to obtain a second medical release[3] and that in addition to the monetary loss by the delay in being placed in the Tour 2 Equipment Operator position, she endured stress.

The court agrees that plaintiff has not made out a prima facie case of retaliation. Plaintiff's real complaint is the medical documentation; the two week salary delay flowed from that requirement. That employer action is not one that would have been materially adverse to a reasonable employee or job applicant. That requirement cannot be deemed to be harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.

Even if plaintiff had made out a prima facie case, she cannot succeed. USPS articulated a legitimate business reason for requiring a medical opinion. It was required by a MOU incorporated into the CBA. Plaintiff was on light duty at the time she was accepted for the position and through the end of December 1999. There is nothing unreasonable about requiring proof of her physical ability to perform a new job. Plaintiff has offered no evidence that the proffered reason was a pretext for discrimination.

IV.

For the above stated reasons, the magistrate judge recommends that the court grant defendant's motion for summary judgment and dismiss plaintiff's complaint with prejudice.

---

[3] Plaintiff was told she did not need a second physical and that she could rely on an opinion from her treating physician. She could have resubmitted Dr. McNamara's prior release.

Dated: August 11, 2006                              s:\Patricia A. Hemann
                                                    Patricia A. Hemann
                                                    United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

11