IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

----------------------------------------------------- :
 : CASE NO. 1:03 CV 1230
DEBORAH A. PATTON, :
 :
 Plaintiff, :
 : OPINION AND ORDER ADOPTING
 : REPORT AND RECOMMENDATION
 -vs- : AND GRANTING DEFENDANT'S
 : MOTION FOR SUMMARY JUDGMENT
JOHN E. POTTER, POSTMASTER :
GENERAL, UNITED STATES POSTAL :
SERVICE, :
 :
 Defendant.

-----------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 19 June 2003, plaintiff Deborah Patton filed a complaint against her former employer the United States Postal Service ("USPS"), alleging claims of employment discrimination and retaliation in violation of 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"), 42 U.S.C. § 2000e ("Title VII"), and 29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act ("ADEA"). (Docket No. 1).

This matter is now before the Court on the defendant's motion for summary judgment (Docket No. 57). A Report and Recommendation ("R&R") from U.S. Magistrate Judge Patricia Hemann recommends that the defendant's motion be granted (Docket No. 63). The plaintiff timely filed objections to the Magistrate Judge's recommendation. (Docket No. 64).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de

novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  In the Sixth Circuit, objections to a magistrate judge's R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

For reasons set forth below, this Court will adopt the Magistrate Judge's R&R and will grant the defendant's motion for summary judgment.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Deborah Patton, an African-American woman over the age of 40, started working for the USPS on 23 August 1980 as a mail-handler at the Cleveland Processing / Distribution Center.  (Docket No. 43 at ¶¶ 2, 5).  Prior to the present litigation, Ms Patton has filed numerous Informations for Pre-Complaint Counseling  with the Equal Employment Opportunity Commission ("EEOC"), as well as EEO Complaints.  Id. at ¶ 7.  In addition, Ms Patton has filed three lawsuits against the USPS alleging claims of discrimination and retaliation.  (See Docket No. 51).

In 1991, Ms Patton was diagnosed with "adjustment disorder and moderate depression," which she asserts are the result of a hostile work environment.  Id. at ¶ 8.  She alleges the ongoing harassment in her workplace exacerbated her condition into "major depression" by 1998.  Id.   Ms Patton took a leave of absence for abdominal surgery beginning 17 September 1999, and returned to work two months later on 18 November 1999.  Id. at ¶ 9.  Ms Patton states that following her return from medical leave, the USPS immediately forced her to perform regular duties despite her doctor's

2

instructions for her to be placed on restricted duty until 30 December 1999. Id. Ms Patton asserts this conduct combined with other harassment caused her "severe emotional distress, anxiety, and loss of sleep." Id.

On 23 December 1999, Ms Patton applied for the position of Tour 2 Equipment Operator. (Docket No. 57). At the time she applied for this position, she was a Level 4 mail handler earning $37,727 per year. Id. On 28 December 1999, Ms Patton was notified that she was the successful bidder for the Tour 2 Equipment Operator position. (Docket No. 59, Pl.'s Ex. 4). This position had a Level 5 salary, which increased Ms Patton's salary to $38,602 per year.[1] (Docket No. 57 at 2). The letter notifying Ms Patton of her new position stated that the placement would become effective after the Postal Employee Development Center ("PEDC") notified the USPS Human Resources Department ("USPS HR Dept.") that Ms Patton had completed her training and was qualified to assume her new duties.[2] Id.

Ms Patton completed the training for her new position on 12 January 2000 (Docket No. 43 at ¶ 10), and the PEDC notified the USPS HR Dept. to this effect on 18 January 2000 (Docket No. 57 at 3). On the same day the USPS HR Dept. received notice of Ms Patton's completed training, Ms Patton contacted the local EEOC office to request an appointment with an EEO Counselor. (Docket No. 59, Pl.'s Ex. 1).

---

[1] This salary increase amounted to an additional $875 per year, or $0.42 per hour. (Docket No. 57, Def.'s Attach, Decl. Of Cullen Kiely).

[2] The letter explained, "[t]he award notice did NOT assign an effective date to your bid. This placement will NOT become effective until after I have been notified by PEDC that you have fully qualified for this position. * * * You are NOT to assume this position until after you have been notified by [the USPS HR Dept.] of an effective date." (Docket No. 59, Pl.'s Ex. 4).

3

Two days later, on 20 January 2000, the USPS HR Dept. notified Ms Patton in writing that her union contract required her to produce medical documentation affirming that she was no longer on restricted duty.  (Docket No. 59, Pl.'s Ex. 8).  The letter from the USPS HR Dept. specified,

> The medical documentation must state that you "can/cannot perform the full duties of the position without restrictions within 6 months." * * *
> Medical documentation not stating the above will not be accepted.
> Updates of restrictions, 'Can return to work on xxx date, etc.' do not meet the criteria of the [Memorandum of Understanding between the USPS and the Mail Handlers Union, Local 204] and will not be accepted.

(Docket No. 59, Pl.'s Ex. 8). On 26 January 2000, Ms Patton submitted a letter from her physician dated that same day stating that Ms Patton could perform full duties without restrictions as of 31 December 1999.  (Docket No. 59 at 4, and Pl.s Ex. 9).  Ms Patton's pay was subsequently increased from Level 4 to Level 5 on 29 January 2000, the first day of the next pay period following the USPS HR Dept.'s receipt of the medical documentation.  (Docket No. 57, Def.'s Attach, Decl. Of Cullen Kiely). Although her salary increase went into effect three days after she produced the requisite medical documentation, Ms Patton's complaint asserts she did not actually begin her new duties until 26 February 2000. (Docket No. 43).

On 7 February 2000, after receiving her pay increase but before assuming her new duties, Ms Patton filed an "EEO Information for Pre-Complaint Counseling" with the EEOC, alleging "patterns of discrimination, harassment and retaliation." (Docket Nos. 43 at ¶ 12, 59, Pl's Ex. 1).  Ms Patton filed a formal complaint with the EEOC on 5 June 2000, alleging that the USPS discriminated on the basis of race, gender, and age, and that the USPS retaliated against her by not permitting her to start her new bid

4

assignment on 15 January 2000.  (Docket Nos. 43 at ¶ 13).  The EEOC's "Final Decision" concluded that Ms Patton failed to establish a prima facie case of discrimination or retaliation.  (Docket No. 47, Pl.'s Ex.).  Ms Patton received her right to sue letter on 20 March 2003.  Id.

Ms Patton filed her initial complaint with this Court on 19 June 2003.  Ms Patton, who initially filed pro se but has since retained counsel for this matter, collapsed multiple claims for relief into a single cause of action in her first complaint.  In an effort to clarify what specific causes of action Ms Patton intended to prosecute, this Court twice ordered Ms Patton to amend her complaint by separately delineating her different claims. (Docket Nos. 21, 24, 38).

In her second amended complaint, Ms Patton alleges acts of discrimination and retaliation stemming from two events: (1) the alleged delayed start date for her new position as Tour 2 Equipment Operator, thereby causing her emotional hardship and a loss of pay of $00.42 per hour for a two-week pay period, and (2) an alleged constructive discharge in the form of forced disability retirement.  (Docket Nos. 43 and 44).  On 15 December 2005, this Court dismissed the claims arising from the alleged constructive discharge because Ms Patton failed to exhaust her administrative remedies with respect to this allegation.  (Docket No. 51).

The USPS filed a motion for summary judgment on 17 February 2006.  (Docket No. 57).  The matter was referred to U.S. Magistrate Judge Hemann for a R&R.  (Docket No. 61).  Magistrate Hemann concluded that Ms Patton failed to establish a prima facie case for retaliation, and that Ms Patton's arguments with respect to violations of the ADA and Rehabilitation Act were outside the scope of this action

5

pursuant to the Court's 15 December 2005 order. (Docket No. 63). The R&R recommended that the defendant's motion for summary judgment should be granted. Id.

The plaintiff objected to the R&R on three grounds: (1) the R&R erred in recommending that the plaintiff's allegations of a hostile work environment should not be considered by the Court with respect to Ms Patton's discrimination claim, (2) the R&R incorrectly concluded that the plaintiff failed to establish a prima facie case of retaliation, and (3) the R&R incorrectly employed the tripartite framework set forth in McDonnell Douglas, Corp. V. Green, 411 U.S. 792 (1973) and Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) because the plaintiff sufficiently produced direct evidence of discrimination. (Docket No. 64).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the motion is properly made and supported as provided in Rule 56(c), the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not enough for the nonmoving party to point to any alleged factual

dispute between the parties. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To survive summary judgment, the dispute must involve a genuine issue of material fact; that is, a fact that might affect the outcome of the suit under the governing substantive law. Id., 477 U.S. at 248.

As summary judgment is a mechanism to dispose of "factually unsupported claims or defenses," Celotex, 477 U.S. at 323-24, the rule is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir. 1989). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. LAW AND ANALYSIS

As a preliminary matter, the Court first clarifies the causes of action presently at issue.[3] First, Ms Patton alleges the USPS retaliated against her in violation of Title VII when it allegedly prevented her from timely starting her new position as Tour 2 Equipment Operator on 15 January 2000. Second, Ms Patton alleges the USPS discriminated against her on the basis of her gender, race, age, and disability in violation of Title VII, the Rehabilitation Act, and the ADEA when it allegedly prevented

---

[3] Despite multiple Court orders directing the plaintiff to delineate and clarify her different causes of action, the plaintiff's amended complaint and supporting brief do not clearly identify the basis on which she believes she is entitled to relief. For this reason, the Court broadly interprets her complaint to include two causes of action arising from the same event.

her from timely starting her new position as Tour 2 Equipment Operator on 15 January 2000. The Court will address the retaliation and discrimination claims separately.

**A. Retaliation claim**

Title VII's anti-retaliation provision provides in pertinent part,

> [I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In the absence of direct evidence of retaliation, as in this case, a plaintiff alleging retaliation in violation of Title VII must present evidence to establish a prima facie case to survive a motion summary judgment. DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004). The prima facie case for retaliation requires the plaintiff to prove by a preponderance of the evidence that (1) she engaged in activity protected by Title VII, (2) the defendant had knowledge of her protected activity, (3) the defendant took adverse action subsequent to the protected activity, and (4) there is a causal connection between the protected activity and the employer's adverse action. Equal Employment Opportunity Comm'n v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997). Once the plaintiff establishes each element of the prima facie case, the defendant employer must then articulate a legitimate, non-discriminatory reason for the employment decision. Wren v. Gould, 808 F.2d 493, 501 (6th Cir. 1987). If the defendant satisfies its burden, the plaintiff next bears the burden to show that the defendant's non-

8

discriminatory reason is pretextual. <u>McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.</u>, 440 F.3d 320, 332 (6th Cir. 2006).

In the instant case, Ms Patton failed to show that the USPS took any adverse action against her. The Supreme Court defines adverse employment action in the retaliation context as a "materially adverse" employment action which would dissuade "a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Sante Fe Railway Co. v. White</u>, ___ U.S. ___, 126 S.Ct. 2405, 2415 (2006) (internal quotations omitted). By defining adverse action in this way, the <u>Burlington</u> standard separates the significant harms from the trivial harms, deducing that only the significant harms will have the retaliatory conduct Title VII intends to prohibit. <u>Id.</u>[4]

What is paramount to this analysis is the fact that Ms Patton did in fact receive her salary increase and she did in fact assume her duties as a Tour 2 Equipment Operator. These facts alone demonstrate that Ms Patton was not subjected to adverse action that would dissuade a reasonable employee from participating in protected activity.

Ms Patton argues she should have been permitted to assume her new duties on 15 January 2000 (the first day of the new pay period following completion of her

---

[4] "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The anti-retaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibitng employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally, petty slights, minor annoyances, and simple lack of good manners will not create such a deterrence." <u>Burlington</u>, ___ U.S. ___ 126 S.Ct. At 2415 (internal quotations and citations omitted).

training), and that this two-week delay in her salary increase and six-week delay in her start date was retaliation for previous EEOC activity.  Contrary to Ms Patton's argument, however, the letter awarding her the new position stated that there would be no effective date of her new position until the PEDC notified the USPS HR Dept. that she had completed her training.  Furthermore, the USPS did not specify when she would assume her new position even after it received confirmation from the PEDC.  The USPS HR Dept. received the notification on 18 January 2000, Ms Patton's salary increase went into effect eleven days later on 29 January 2000, and she assumed her new duties on 26 February 2000.  These are not facts on which a reasonable trier of fact could infer an act of retaliation.

Ms Patton further argues that the USPS HR Dept.'s request for additional medical documentation was a retaliatory adverse action.  The Court disagrees.  Although the request could be conceived as an inconvenience, it by no means amounts to a harm so significant that a reasonable employee would be deterred from engaging in protected activity.  Given the facts of this case, the request was understandable.  A reasonable employee is more likely to construe such a request as nothing more than an action taken in compliance with the union contract.

Even if one were to assume that the USPS's decisions surrounding Ms Patton's new position and salary increase amounted to adverse action, Ms Patton still fails to show any causal connection between her protected activity and the USPS's employment actions.  "A causal link requires the plaintiff to proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  Zanders v. Nat'l R.R. Passenger Corp.,898 F.2d 1127, 1135 (6th Cir. 1990)

(quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)).  Ms Patton argues there is a causal link between her protected activity and the alleged retaliatory action because the USPS had knowledge of Ms Patton's multiple EEOC complaints and lawsuits filed against the USPS, and had knowledge that Ms Patton's medical restrictions ended on 30 December 1999.  Nevertheless, Ms Patton fails to demonstrate any retaliatory motive on the part of the USPS.  She fails to proffer evidence that would infer that the USPS HR Dept. was motivated by anything other than complying with its obligations under Ms Patton's union contract.

Taking this analysis one step further, solely for the sake of argument, the USPS satisfies its burden in articulating a legitimate non-discriminatory explanation for its employment decision.  The USPS states it required Ms Patton to produce written authorization from a doctor familiar with her physical condition that Ms Patton was no longer on restricted duty to comply with the terms of her employment contract.  The letter to Ms Patton specified that the medical documentation must state that she could "perform the full duties of the position, without restrictions, within six months," and that a note stating that she could "return to work on xxx date, etc." was not acceptable.  The medical documentation already on file with the USPS HR Dept. was insufficient under the language required by the union contract.[5]  For this reason, explains the defendant, it required additional medical documentation before it could permit Ms Patton to assume her new duties.  Ms Patton offered no evidence to demonstrate that this explanation

---

[5] The note produced by Ms Patton's physician on 2 December 1999 stated that Ms Patton was still experiencing discomfort in her surgical area and that she should continue to work under certain physical restrictions for four more weeks.  (Docket No. 59, Pl.'s Ex. 6).

11

was pretextual.

Finally, the plaintiff argues in her objection to the Magistrate Judge's R&R that the tripartite framework of shifting the burden between the plaintiff and defendant is unnecessary because her case is based on direct evidence. (Docket No. 64 at 6-7). The plaintiff is correct that an employee alleging discrimination or retaliation can satisfy her prima facie case by proffering direct evidence of discrimination or retaliation. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). In such cases, the defendant then bears the burden to prove it would have made the same employment decision even if it had not been motivated by unlawful discrimination or retaliation. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). Examples of direct evidence would include an employer's express statement of a desire to terminate an employee based on their membership in a protected class or an employer's facially discriminatory employment policy. Id. (citing to Trans World Airlines, Inc. V. Thurston, 469 U.S. 111 (1985) and LaPointe v. United Autoworkers Local 600, 8 F.3d 376 (6th Cir. 1993)). Ms Patton has not produced direct evidence of discrimination or retaliation. Instead, she sets forth a set of facts from which she argues a trier of fact should infer discrimination and retaliation. This is circumstantial evidence, not direct evidence, and therefore the tripartite framework set forth in McDonnell Douglas and Burdine and followed by this Court and the Magistrate Judge is the appropriate analysis.

Viewed in light of the parties' evidentiary burdens, the USPS sufficiently articulated a legitimate reason for its employment decisions with respect to Ms Patton's salary increase and new start date, and Ms Patton failed to prove by a preponderance of the evidence that the USPS retaliated against her in violation of Title VII or that the USPS's

articulated reason was pretextual. Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's retaliation claim will be granted.

**B. Discrimination claim on the basis of race, sex, age, and disability**

Title VII, the Rehabilitation Act, and the ADEA collectively prohibit the USPS from discriminating against its employees on the basis of race, gender, age, or disability. To survive a motion for summary judgment, a plaintiff alleging discrimination in the workplace must establish each element of the prima facie case set forth by the U.S. Supreme Court: (1) she was a member of a protected class, (2) she was performing her job in a satisfactory manner, (3) her employer engaged in adverse employment action, such as discharge or failure to promote, and (4) she was treated less favorably than other workers outside her protected class. Thomas v. Potter, 93 Fed.Appx. 686, 688 (6th Cir. 2004) (citing to Burdine, 450 U.S. at 322 (1986)).

Assuming Ms Patton can satisfy her burden that she is a member of a protected class because of her age, race, gender, or disability, and that she was performing her job in a satisfactory manner, Ms Patton's discrimination claim fails for the same reason her retaliation claim failed: she suffered no adverse action. The requirement to produce medical documentation is not a materially adverse action, but a decision made to comply with Ms Patton's union contract. Ms Patton timely received her salary increase after the USPS HR Dept. received notification that Ms Patton had completed her training and after it received Ms Patton's requisite medical documentation. Finally, Ms Patton assumed her new duties as a Tour 2 Equipment Operator on 26 February 2000.

13

Accordingly, as Ms Patton fails to satisfy her evidentiary burden for the prima facie case of discrimination in violation of Title VII, the defendant's motion for summary judgment with respect to Ms Patton's discrimination claims will be granted .

### IV.  CONCLUSION

For the reasons set forth above, the Court finds there is no genuine issue as to any material fact in this case.  The plaintiff failed to meet her burden in demonstrating she was subjected to an adverse employment action as required by the prima facie cases for claims of discrimination and retaliation.

The Court therefore adopts the recommendation of Magistrate Judge Hemann, grants defendant USPS's motion for summary judgment, and dismisses  as a matter of law pursuant to Fed. R. Civ. P. 56(c) the plaintiff's claims asserted against the defendant in her "Second Amended Complaint" (Docket No. 43).

IT IS SO ORDERED.

    /s/Lesley Wells  
UNITED STATES DISTRICT JUDGE

Dated: 7 November 2006